IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR No.: 3:14-667-JFA |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| JEREMY PUGH WASHINGTON ) | |
| _____ ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 1396).[2] Seeking compassionate release, the defendant contends that his medical conditions, along with the threat of the ongoing COVID-19 pandemic, constitute an extraordinary and compelling reason for consideration of his immediate release. Additionally, the defendant suggests that if he were sentenced today, his sentence would be substantially lower than the sentence imposed in 2015.

The government has responded, conceding that the defendant has shown an extraordinary and compelling medical reason for consideration of release. However, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The government also concedes that if the defendant were sentenced today he would not be classified as a career offender, and that the

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

[2] The defendant's motion for a reduction under §§ 401 and 404 of the First Step Act (ECF No. 1336) was denied by this court because the defendant was sentenced in 2015 and thus already under the statutory penalties of the Fair Sentencing Act of 2010 (ECF No. 1375).

1

defendant would face a lower statutory mandatory sentence. The defendant's last reply to the government's response was filed on May 31, 2022.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is granted in part and denied in part.

## STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(I) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for

compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (I) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result,

3

district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

Here, the government contends that the defendant has not fully exhausted his administrative remedies in this case. The government acknowledges that the defendant has filed a request with his Warden for immediate release based upon his medical conditions. However, the government contends that the defendant's request to the Warden did not request release due to intervening changes in the law which would render his sentence different, thus not exhausting his administrative remedies on this issue.

In this situation, the court will decline to require exhaustion on the intervening changes in the law issue raised by the defendant. This is because the Warden is bound by U.S. Sentencing Guideline (U.S.S.G.) § 1B1.13 which limits the authority of the Warden to grant compassionate release requests to certain specified categories. A change in sentencing

5

law, or more specifically a change to the career offender law, is not within the jurisdiction of the Warden.  Therefore, to require the defendant to return to the Warden to request relief that is not within the Warden's power to give would be to require a futile act.  Exhaustion requirements are not jurisdictional and may be excused on grounds of futility. Accordingly, the court will proceed to review the defendant's motion on its merits.

## DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release.  However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release.  If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States*

*v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

## I. *The Defendant's Medical Conditions*

In his motion (ECF No. 1396), the defendant contends that he suffers from sleep apnea, essential (primary) hypertension, and obesity. The defendant's Presentence Report (PSR) (ECF No. 694) filed shortly before the defendant's sentencing in 2015 reveals that the defendant suffered from all three of these medical conditions at the time of his sentencing. The government concedes that the defendant has demonstrated an extraordinary and compelling reason for consideration of his release based upon his medical conditions. However, the government then argues that the defendant's release at this time is not appropriate based upon a careful review of the § 3553(a) factors, coupled with the defendant's postsentencing conduct.

## II. *Factors under § 3553(a)*

A determination that the defendant has demonstrated extraordinary and compelling reasons for consideration of his release does not end the courts inquiry. Under Fourth Circuit guidance, this court will now make an individualized assessment of the defendant's case, with specific attention to the 18 U.S.C. § 3553(a) factors, and also with individualized review of the defendant's post-sentencing conduct while incarcerated. The court will address the § 3553(a) factors in turn.

1. *Nature and Circumstances of the Offense*. The defendant was one of 21 defendants named in a 2-count Superseding Indictment filed in the District of South Carolina in

November 2011. The defendant was named in Count 1 which charged him with being a member of a conspiracy to possess with intent to distribute and to distribute more than 5 kilograms or more of cocaine and 280 grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 851.

The investigation revealed that the defendant was identified as a major participant in a large scale drug trafficking conspiracy involving the acquisition and distribution of multi-kilogram quantities of both cocaine and crack cocaine throughout the Midlands area of South Carolina.

The defendant pleaded guilty to Count 1 pursuant to a written plea agreement (ECF No. 467). The defendant stipulated that he had at least two prior felony drug convictions that had become final and that the government had properly notified him of those convictions by filing the § 851 Information.

At sentencing, the defendant was held accountable for 6,150.268 kilograms of marijuana equivalent for the purpose of establishing his base offense level. The PSR calculated the defendant's total offense level at 34 and his criminal history category was VI. The defendant's adjusted offense level was 32, which became 37 after a 5-level enhancement under U.S.S.G. § 4B1.1 because he was deemed a career offender. The offense level was then reduced to 34 after receiving a 3-level reduction for acceptance of responsibility.

Under U.S.S.G § 5G1.2(b), the defendant's statutory term of life imprisonment became his Guidelines sentence range, not derived from the Guidelines, but required by the

mandatory minimum statute then in place (28 U.S.C. §§ 841(a)(1), 841(b)(1)(A)).  But for the mandatory minimum, the defendant's Guideline range would have been 262 to 327 months.  On September 22, 2015, this court sentenced the defendant to life imprisonment.

The defendant did not file a direct appeal of his conviction and sentence.  He did file a motion to vacate or correct his sentence pursuant to 28 U.S.C. § 2255, raising claims of ineffective assistance of counsel.  In November 2020, this court denied the defendant's motion on the merits (ECF No. 1390).

In 2019, this court reduced the custodial portion of the defendant's sentence from life to 300 months based upon the government's Rule 35 motion.

The defendant has served approximately one-third of his 300-month sentence and is currently scheduled to be released in January 2037.  He is presently housed at FCI Butner, Medium I.

2.  *History and Characteristics of the Defendant*. The defendant is 41 years old and was raised by his mother in Columbia, South Carolina until the age of 11 when he went to live with his father for approximately 3 years.  At the time of his sentencing, the defendant's mother was incarcerated with the S.C. Department of Corrections for a drug trafficking conviction. His father was retired from the U.S. Army and lives in Tennessee. The defendant has 6 siblings.  He is married with 5 children.

The defendant's prior criminal history includes state court convictions for criminal conspiracy ( 1998) for which the defendant received a suspended sentence; failure to stop for

9

a blue light (1999) and "party to a crime" for which the defendant received a sentence of 5 days; possession with intent to distribute cocaine (2004) for which the defendant received a sentence of 6 months; distribution of crack cocaine (2006) for which the defendant received a sentence of 5 years, but was released from that sentence after serving 11 months. The defendant also had two state court convictions for possession with intent to distribute crack cocaine and trafficking in crack cocaine which were part of the relevant conduct for the instant offense. However, these two state offenses played no part in the defendant's sentence.

### A.  Post Sentencing Conduct

Commendably, the defendant has not incurred any disciplinary violations while serving his current sentence. The defendant has taken a strong initiative to improve himself while incarcerated and he has completed a substantial number of educational and vocational courses for which he should feel very proud. He has also completed his GED.

3. *Seriousness of the Crimes*. As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in considering the present motion.

7. *Need to Avoid Unwarranted Disparity*. Compared with the culpability of similarly situated defendants, the defendant's imposed sentence was and is in line with statutory factors.

Given the above, although the defendant's medical conditions present an extraordinary and compelling reason, a review of the applicable § 3553(a) factor's counsels against immediate release. However, as discussed in depth below, the changes in the applicable sentencing regime, when combined with these § 3553(a) factors do not foreclose a reduction in the defendant's custodial sentence.

### III.  *The Defendant's Challenge to His Career Offender Status*

As an additional basis for relief, the defendant contends that his sentence today would not be as severe under the now-applicable Guidelines. The First Step Act made no changes to the predicate act requirements for career offender status under the Guidelines. Case law from the appellate courts has, to some extent, modified the requirements for career offender

11

status which will be addressed by this court.

In order to be classified as a career offender under the Guidelines, the defendant must "(1) be at least 18 years of age at the time of the instant offense; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions for either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1.

The two predicate acts under USSG § 4B1.1 are defined as:

(a) [t]he term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

>  (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
>  (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

(b) [t]he term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

When the defendant was sentenced in 2015, he was classified as a career offender under the then-applicable sentencing Guidelines.

Additionally, the government filed an Information pursuant to 21 U.S.C. § 851 (ECF No. 267) notifying the defendant that he was subject to enhancements as a result of his

three prior convictions which would serve as predicate offenses for mandatory minimum sentencing purposes.

The government concedes that if the defendant were sentenced today, he would not be classified as a career offender under the Guidelines because his federal offense of conviction involved *conspiracy* to engage in a controlled substance offense. In *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019), the Fourth Circuit Court of Appeals has held that such a conspiracy does not qualify as a conviction supporting career offender status.[3]

As to the § 851 enhancements, the government concedes that two of the three prior convictions would no longer qualify as predicate offenses for sentencing purposes under 21 U.S.C. § 841(a)(1) and (b)(1)(A).[4] The § 851 Information notified the defendant that he was subject to enhancements as a result of three prior convictions[5] which would serve as predicate offenses for mandatory minimum sentencing purposes. It was these three prior predicate convictions that drove the defendant's mandatory sentence (requiring a sentence

---

[3] *Norman* held that a controlled substance conspiracy in violation of 21 U.S.C. § 846 is not categorically a controlled substance offense, and thus not a qualifying offense for career offender status under the USSG. *Norman's* holding, however, has not been deemed to apply retroactively.

[4] The defendant pleaded guilty to Count 1 in violation of 21 USC § 841 (a)(1), (b)(1)(A). The penalty for this offense is:—in a case involving 5 kilograms or more of cocaine OR 280 grams or more of cocaine base and *two or more prior felony drug convictions*—a mandatory term of life imprisonment (ECF No. 467 at 2).

[5] Those three convictions include: (1) March 9, 2004 conviction for PWID Powder Cocaine, sentenced to 6 months credit for time served, Lexington County General Sessions No. 01GS3200948 with an arrest date of December 23, 2000; (2) December 6, 2006 conviction for Manuf, Distrib, Etc, Ice/Crank/Crack Cocaine 1st, sentenced to 5 years, Lexington County General Sessions No. 06GS3203871; (3) March 13, 2014 conviction for Manufacture, Distribution of Cocaine Base 2nd, sentenced to 5 years, Lexington County General Sessions No. 14GS3200544, with an arrest date of April 30, 2012.

of life incarceration), not the defendant's career offender status.

Hypothetically, if the defendant was being sentenced today, post-First Step Act of 2018 and post-*Norman*, he would be exposed to non-career offender Guideline provisions for a total offense level of 29 (consisting of a base offense level of 32 less three for acceptance of responsibility) and a criminal history category of IV, and the Guideline range would be 121 to 151 months. However, under 21 U.S.C. § 841(b)(1)(A), the defendant still has one valid predicate offense and is therefore subject to a mandatory minimum of 15 years (180 months). Therefore, his Guidelines range would be 180 months if sentenced today.

This court previously granted a Rule 35 reduction for substantial assistance from Life to 300 months. At the time, this represented a 2-level departure from a total offense level 39, the lowest offense level at criminal history category VI that yields a potential life sentence range (360 months to life) to a level 37 (292 to 365 months).

Applying that same formulaic logic to the defendant's hypothetical present-day Guidelines calculations, the lowest offense level at criminal history category IV that yields a potential 180-month sentence range is 31 (151– 188 months). A 2-level reduction from level 31 would put the defendant at an offense level 29, resulting in a Guidelines range of 121–151 months. So, if sentenced today with the same type of Rule 35 reduction, his sentence would be approximately 13 to 15 years shorter than his current sentence. The defendant avers that the drastic disparity in his punishment if sentenced under today's laws constitutes an extraordinary and compelling reason justifying a reduction in his custodial

14

term.

This court acknowledges that under *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), it is authorized, in compassionate release cases, to examine the sentence the defendant would receive today as compared with the sentence actually imposed at the time of conviction in 2015. As noted above, removing the career offender enhancement from the defendant's Guideline calculations would result in a reduction to the low end of the Guidelines by 179 months. *McCoy* does not, however, require that this court reduce a defendant's sentence based upon the mere difference in Guideline calculations.

The *McCoy* court also emphasized certain factors when calling for the need for "individualized assessments." These factors included the defendants' youth at the time of the offenses, their lack of significant prior criminal history, their exemplary behavior and rehabilitation in prison, and their already-substantial years of incarceration.[6]

The facts presented here contain noticeable similarities to those emphasized in *McCoy*. As an initial matter, the defendant has no history of disciplinary infractions while incarcerated. This feat is rendered more admirable considering he was originally sentenced to life in prison. Additionally, the defendant has availed himself of many opportunities to better himself as evidenced by the numerous educational and vocational credits obtained while incarcerated. Moreover, Washington's criminal history, although more severe than

---

[6]Specifically, the *McCoy* defendants were in their early 20s when they committed the offenses of conviction and had relatively no criminal record. Additionally, those defendants had spent substantial years incarcerated (17–25 years). The unstacking of the § 924(c) sentences in *McCoy* resulted in a reduction from 45 years to 15 years (a 66% reduction) for some defendants and a reduction of 200 months for another

the *McCoy* defendants, contains no violent crimes. The severity of this criminal history has also been de-emphasized by the amendment of 21 U.S.C. § 841 in that two of his prior convictions no longer qualify as § 851 predicates.

Conversely, the court would note that several facts of this case vary from those presented in *McCoy*. Defendant McCoy was only 19 years old at the time of the commission of his crime and his only prior conviction was for reckless driving. In the other three cases involved in the *McCoy* decision, the defendants were between 22 and 24 years old at the time of their offenses. One of those defendants had no criminal history and another had one minor prior conviction for which he served no jail time.

In the case before this court, the defendant was 32 when he committed the offense of conviction. Additionally, the defendant has a lengthy criminal history that originally resulted in a criminal history category of VI.

All of the defendants in *McCoy* received sentences of 45 years. Each defendant served approximately 25 years in prison. The then-applicable § 924(c) stacking regime in *McCoy* increased those defendants' sentences by 30 years. Defendant Washington received 25 years and has served less than one half of that sentence. As explained above, the changes in sentencing law applicable here would result in difference of approximately 13 to 15 years.

Thus, although the defendant's individualized assessment contains noticeable differences from the defendants in *McCoy*, he nonetheless makes a notable case for compassionate release based upon certain similarities emphasized by the Fourth Circuit. The

16

differences weigh against immediate release, but the similarities weigh in favor of a reduced sentence.

This court concludes that if the defendant were sentenced today, his sentence would be drastically different from the one imposed 7 years ago. Accordingly, the court determines that the defendant has established a second extraordinary and compelling reason for his release, that being the lower sentencing regime today.

As stated earlier, a review of the § 3553(a) factors counsels against the defendant's immediate release. However, this court retains the discretion to reduce the defendant's term of confinement commensurate with the extraordinary and compelling reasoning presented. Here, the court, and the government acknowledge that, although the relevant changes in sentencing laws are not retroactive, the defendant would be exposed to a much different Guidelines range than when originally sentenced. Namely, the defendant would now be exposed to a mandatory minimum sentence of 15 years (180 months) as opposed to the life sentence originally received and the 300-month sentence he is currently serving.

Additionally, the court found it prudent to grant the functional equivalent of a 2-level departure when granting the government's Rule 35 motion. However, given the drastic disparity between the defendant's original mandatory minimum of life compared to the now applicable minimum of 15 years, the court would not grant as great a departure for the Rule 35 motion. If presented with the same motion today, the court would consider a 1-level departure from lowest range encompassing the 15 year (180 month) minimum adequate.

Thus, the defendant's offense level (considering his criminal history category now at IV) would move from 31 (151 to 188 months) to 30 (135 to 168 months). Based on this range and considering all of the defendant's § 3553(a) factors, in combination with his post-sentencing conduct, the court finds a sentence of 168 months sufficient, but not greater than necessary. Accordingly, the defendant's current sentence of 300 months is hereby reduced to 168 months.

## CONCLUSION

In summation, the defendant's request for immediate compassionate release based upon his medical conditions is denied. However, his motion is granted to the extent it is based upon the changes in the sentencing regimes when combined with his individualized assessment.

For the reasons outlined above in this order, the custodial portion of the defendant's sentence is reduced to 168 months. All other provisions of the original sentence, including the terms of supervised release, remain in full force and effect.

IT IS SO ORDERED.

July 20, 2022　　　　　　　　　　　　　　　Joseph F. Anderson, Jr.
Columbia, South Carolina　　　　　　　　　United States District Judge